IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SHEBA ETHOPIAN RESTAURANT,      *
INC. d/b/a Queen of Sheba        *
Ethiopian Restaurant,            *
                                 *
     Plaintiff,                  *
                                 *      CIVIL ACTION FILE
     -vs-                         *
                                 *      No. _____
DEKALB COUNTY, GEORGIA,          *
JEFF RADER, KATHIE GANNON,       *
JOSEPH COX, JOHN JEWETT,         *      JURY TRIAL DEMANDED
ANDREW A. BAKER, ZACHARY L.      *
WILLIAMS, and DAVID ADAMS,       *
all in their individual and      *
official capacities,             *
                                 *
     Defendants.                 *

**COMPLAINT FOR DAMAGES AND REQUEST FOR**
**DECLARATORY, INJUNCTIVE AND EQUITABLE RELIEF**

NATURE OF THE CASE

1.

     This is a civil rights case.  DeKalb County is carrying

out an illegal policy: it is attempting to prohibit

Ethiopian restaurants (licensed to sell alcoholic beverages)

in Commissioner District 2 (a majority white district) from

operating after 12:30 a.m.  Yet, in that district, the

County continues to permit white owned-and-operated

restaurants that serve predominantly white late-night

customers to stay open until 3:55 a.m.  This case concerns

the selective and arbitrary enforcement of DeKalb County's

ordinances regulating alcoholic beverages, fire safety, building, and zoning.

2.

The County is preventing Sheba, a restaurant licensed to serve alcoholic beverages since 1998, from operating by revoking its business license and certificate of occupancy based on political and other inappropriate concerns.  With this verified complaint, Sheba seeks an order enjoining the County from disrupting its business and mandating that the County restore its certificate of occupancy.  Sheba is entitled to damages.

PARTIES

3.

Plaintiff Sheba Ethiopian Restaurant, Inc. d/b/a Queen of Sheba Ethiopian Restaurant ("Sheba") is Georgia corporation in good standing, which, since 1998, has been licensed by DeKalb County as an eating establishment entitled to provide dining, alcoholic beverage service, musical entertainment and customer dancing since 1998 at 1594 Woodcliff Dr., NE, Atlanta, GA 30329.

4.

Defendant DeKalb County ("the County") is a political subdivision of the State of Georgia, which has the capacity to sue and be sued.

5.

Defendant Jeff Rader ("Rader") is the Commissioner for Commissioner District 2 of DeKalb County.  Rader was (and is) acting under color of state law when the events described in this complaint occurred.  Rader is subject to the jurisdiction of this Court.

6.

Defendant Kathie Gannon ("Gannon") is the Commissioner for Commissioner District 6 of DeKalb County.  Gannon was (and is) acting under color of state law when the events described in this complaint occurred.  Gannon is subject to the jurisdiction of this Court.

7.

Defendant Joseph Cox ("Cox") is the Fire Marshal of DeKalb County Fire Rescue Department.  Cox was (and is) acting under color of state law when the events described in this complaint occurred.  Cox is subject to the jurisdiction of this Court.

8.

Defendant John Jewett ("Jewett") is an inspector with the Fire Marshal Division of DeKalb County Fire Rescue Department.  Jewett was (and is) acting under color of state law when the events described in this complaint occurred.  Jewett is subject to the jurisdiction of this Court.

9.

Defendant Andrew A. Baker ("Baker") is the Director of DeKalb County's Planning & Sustainability Department.  Baker was (and is) acting under color of state law when the events described in this complaint occurred.  Baker is subject to the jurisdiction of this Court.

10.

Defendant Zachary L. Williams ("Williams") is DeKalb County's Chief Operating Officer and Acting Finance Director.  Williams was (and is) acting under color of state law when the events described in this complaint occurred.  Williams is subject to the jurisdiction of this Court.

11.

Defendant David Adams ("Adams") is DeKalb County's Chief Building Officer.  Adams was acting under color of state law when the events described in this complaint occurred.  Adams is subject to the jurisdiction of this Court.

VENUE

12.

All acts or omissions alleged in this complaint have occurred, or likely will occur, in the Northern District of Georgia and therefore venue is properly within this district under 28 U.S.C. § 1391(b)(2).

JURISDICTION

13.

Jurisdiction for this suit is conferred in part by 42 U.S.C. § 1983, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

14.

Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 & 2202.

15.

Under 28 U.S.C. §§ 1331 and 1343(a)(3)&(4), the Court can entertain an action to redress a deprivation of rights guaranteed by the United States Constitution, and the Court has jurisdiction under 28 U.S.C. § 1367 to hear an action to redress a deprivation of rights guaranteed by the laws and the Constitution of the State of Georgia.

16.

Upon exercising supplemental jurisdiction, the Court can grant mandamus relief under O.C.G.A. § 9-6-20.

17.

Attorney's fees are authorized by 42 U.S.C. § 1988 and
Georgia law.

18.

This complaint, which does not assert any damages
claims under Georgia law, is intended to serve as the ante
litem notice contemplated by O.C.G.A. § 36-11-1.

RELEVANT ORDINANCES

The Alcohol Code

19.

The County regulates all persons and businesses who
sell or serve alcoholic beverages under the Code of DeKalb
County, Georgia §§ 4-1 through 4-252 ("the Alcohol Code").

20.

Any person or business who desires to sell alcoholic
beverages for on-premises consumption must first apply for
and obtain an alcoholic beverage license under the Alcohol
Code.  See Alcohol Code § 4-46.

21.

Alcoholic beverage licenses issued by the County are
"for the full calendar year or for the number of months
remaining in the calendar year."  Alcohol Code § 4-52(b).

22.

Under the Alcohol Code, "[n]o license or permit ...

shall be denied, suspended or revoked without the opportunity for a hearing...." Alcohol Code § 4-57(a). When the County intends to suspend or revoke an alcoholic beverage license, the:

> issuing department shall provide written notice to the applicant or licensee of the decision to deny, suspend or revoke the license or permit. Such written notification shall notify the applicant or licensee of the right of appeal. Any applicant or licensee who is aggrieved or adversely affected by a final action of the issuing department may have a review thereof by appeal to the alcoholic beverage review board. Such appeal shall be by written petition filed with the county within fifteen (15) days after the final decision or action by the county.

Id., § 4-57(b).

23.

Under § 4-126, the Alcohol Code addresses when alcohol-licensed venues may remain open to the public and when sales may occur:

> Sec. 4-126. - Hours of sale and operation.
>
> Distilled spirits shall be sold and delivered to the customer for consumption on the premises during the following hours:
>
> (a)  Monday through Friday hours are from 9:00 a.m. until 3:55 a.m. of the following day.
>
> (b)  Saturday hours are from 9:00 a.m. until 2:55 a.m. on Sunday.
>
> (c)  Sunday hours are from 12:30 p.m. until 2:55 a.m. on Monday as permitted by section 4-128
>
> Sales and deliveries during all other hours are

prohibited. There shall be no consumption on the
premises after prohibited hours have been in
effect for one-half (½) hour. All licensed
establishments must close their premises to the
public and clear their premises of patrons within
one (1) hour after the time set by this chapter
for discontinuance of the sale of alcoholic
beverages on the premises and shall not reopen
their premises to the public until 9:00 a.m. or
thereafter.

Alcohol Code § 4-126.[1]

### The 2008 Late-Night Establishment Ordinance

24.

On November 18, 2008, the County adopted a Ordinance
08-23, which amended Chapter 27 (Zoning) of the Code of
DeKalb County to define nightclubs and late-night
establishments and to limit their operation within eight
zoning districts ("the Late-Night Establishment Ordinance").
The County's then-CEO, Vernon Jones, approved the Late-Night
Establishment Ordinance on December 9, 2008.

25.

The Late-Night Establishment Ordinance contained two
sections that are relevant to this suit, namely §§ 27-578
and 27-746.  The first of these code sections (§ 27-578,
entitled Principal Uses and Structures) provided:

---

[1] The current version of Section 4-126 comes from
Ordinance 10-12, which was adopted on June 22, 2010.  This
ordinance also amended §§ 4-147 and 4-162 of the Alcohol
Code.

The following principal uses of land and structures shall be authorized in the C-1 (Local Commercial) District:

...

(k)  Late-night establishments,[2] unless the late-night establishment is located at or within one thousand five hundred (1,500) feet of any land zoned for residential use in which case a special permit shall be required.

Id.

26.

The second code section (§ 27-746, entitled "Late night establishments") provided:

The following regulations shall apply to all late night establishments in DeKalb County:

(a)  The regulations that follow and that otherwise are contained in this Code of Ordinances regarding late night establishments and nightclubs are intended to afford protection to residential uses and other uses so as to protect the public health, safety and welfare while respecting and providing adequate opportunities for nightlife in the county.

(b)  Late night establishments and nightclubs shall be subject to all of the following standards:

(1)  Parking facilities within a lot may be shared if multiple uses cooperatively

_____

[2] The County's ordinance elsewhere defined a "late night establishment" to mean "any establishment licensed to dispense alcoholic beverages for consumption on the premises where such establishment is open for use by patrons beyond 12:30 a.m." Ordinance 08-23, § 27-31 (definitions).

establish and operate parking facilities
and if these uses generate parking
demands primarily when the remaining
uses are not in operation. Applicants
shall make an application to the
director of planning or designee for
authorization for shared parking.
Applicants shall include proof of a
written formal shared-parking agreement
between the applicant and all affected
property owners. Shared parking
arrangements may be approved by the
director of planning or designee upon
determination that the above stated
off-street parking requirements for each
use are met during said uses operational
hours.

(2) Valet parking shall not be used to
satisfy the requirement to meet
applicable parking standards.

(3) Methods of traffic circulation, ingress
and egress shall be consistent with best
management practices as approved by the
transportation division of the county's
public works department.

(c) For the purpose of determining whether a late
night establishment or nightclub requires a
special land use permit, the distance of one
thousand five hundred (1,500) feet shall be
measured from the boundary line of the
property proposed to be used as a late night
establishment or nightclub to the boundary
line of property zoned for residential use.

...

(e) Any late night establishment or nightclub
operating pursuant to a validly issued
business and liquor license issued prior to
the effective date of Ordinance No. 08-20,
November 18, 2008, shall be a legal
nonconforming use as defined in article IV,
division 5 of this chapter. No late night

establishment or nightclub currently
operating under a valid license issued prior
to the effective date set forth in this
section shall be required to secure a special
land use permit from the board of
commissioners in order to continue operation.
Such establishments shall be required to
comply with the applicable provisions of
article IV, division 5 of this chapter
regarding cessation, expansion, movement,
enlargement or other alteration of the
late-night establishment or nightclub. After
adoption of this subsection on November 18,
2008, if a licensee is operating a legal
nonconforming late-night establishment or
nightclub at a particular location pursuant
to chapter 27 of this Code, and such license
is revoked, upon revocation, the legal
nonconforming status of the licensee at that
particular location shall be terminated.

Id.

27.

Among other restrictions, the Late-Night Establishment

Ordinance:

- re-categorized all businesses that serve alcohol
  past 12:30 a.m. as "late night establishments";

- required new late night establishments wishing to
  open and operate in certain zones (C-1, C-2, OD,
  OI or any M zoning district) to first obtain a
  Special Land Use Permit (SLUP) from the Board of
  Commissioners if the establishment is located
  within 1,500 feet of "any land zoned for
  residential use";

- required new late night establishments wishing to
  open and operate in certain zones (PC-2, PC-3 and
  OCR) to first obtain a Special Land Use Permit
  (SLUP) from the Board of Commissioners regardless
  of their location within those zoning districts;

- established criteria that the BOC will use in

deciding whether to approve or deny SLUP
applications; and

- grandfathered existing businesses (i.e., those
  late night establishments "operating pursuant to a
  validly issued business and liquor license issued
  prior to ... 11-18-2008") from having to apply for
  a SLUP in order "to continue operation."

28.

The County did not hold a public hearing before
adopting the Late-Night Establishment Ordinance.  Nor did
the County publish within a newspaper of general circulation
within DeKalb County notice of hearing at least 15, but no
more than 45 days, before the date of any hearing on that
ordinance.

The 2015 Late-Night Establishment Ordinance

29.

Under Ordinance 15-06 (adopted on August 25, 2015), the
County re-wrote its Zoning Code and codified its late-night
establishment ordinance at 27-4.2.32.  It did not
substantively change the 2008 Late Night Establishment
Ordinance.

The Late Night Task Force

30.

On information and belief, the County has informally
assembled a group of persons to operate as the "Late Night
Task Force."  This task force randomly selects and orders

existing restaurants to complete and submit what it calls a
"Letter of Entertainment."

<u>FACTS</u>

<u>District 2</u>

31.

The County is divided into five Commissioner Districts
(Districts 1-5).  Imposed over those five districts are two
Super Districts (Districts 6 & 7).  Rader is the
Commissioner for District 2, which includes the Cities of
Decatur and Brookhaven.

32.

On information and belief, of the County's seven
districts, District 2 has the largest percentage of white
residents.

<u>Sheba opens</u>

33.

In 1998, Sheba opened its eating establishment after
the County issued a Certificate of Occupancy ("C.O.") for
Sheba's location.  Sheba also obtained all licenses and
permits required in order to provide dining, alcoholic
beverage service, musical entertainment, and customer
dancing.

34.

Sheba is located in a C-1 zone in Commissioner District

2.  It has a leasehold interest in this property.

35.

After opening, Sheba served alcohol until 3:55 a.m.
Monday through Friday, and until 2:55 a.m. on Saturday and
Sunday as permitted by the Alcohol Code.

36.

Before November 18, 2008, there was no zoning or
alcoholic beverage code designation for a "nightclub."  A
restaurant providing live entertainment such as dancing and
DJs or live music was licensed and classified as an "eating
establishment" under the Alcohol Code, and as a "restaurant"
under the zoning code.

37.

On November 18, 2008, the County amended its zoning
code to require that "late night establishments and night
clubs" located within 1,500 feet of the property line of a
residential property had to obtain a Special Land Use Permit
("SLUP").  That ordinance 'grandfathered' all lawful
nonconforming businesses, including Sheba.

38.

Because at the time of Ordinance 08-23's adoption,
Sheba's business routinely remained open for business until
3:00 or 4:00 a.m., it fit within the definition of "late
night establishment" (sometimes "LNE") in Ordinance 08-23:

"any establishment licensed to dispense alcoholic beverages for consumption on the premises where the establishment is open for use by patrons beyond 12:30 a.m."

39.

Sheba also fit within the definition of "nightclub" at the time Ordinance 08-23 was adopted: "a commercial establishment dispensing alcoholic beverages for consumption on the premises and in which dancing and musical entertainment is allowed, where music may be live, disc jockey, karaoke, and or non-acoustic."

40.

Since opening its business in 1998, in addition to serving food and alcohol, Sheba has routinely provided live music, DJ music, and although there is no designated dance floor, allowed customer dancing.

41.

Under Ordinance 08-23, Sheba is a legal prior non-conforming use, grandfathered pursuant to its provisions with a vested right to continue operating a restaurant with alcohol, music and live entertainment after 12:30 a.m.

42.

About this time, Sheba changed its seating plan slightly by adding a booth (with tables) in lieu of tables and chairs.

43.

Sheba's restaurant concept includes, critically, offering music for its patrons' enjoyment.  Other restaurants in the County similarly offer music for their patrons.

44.

Unlike some restaurants which might offer a jazz trio or an acoustic guitarist, Sheba employs a DJ to select the music to play; the DJ's music selections set the desired ambience.

45.

From the start, Sheba's late-night customers have been predominantly (meaning, more than 50%) Ethiopian and other Eastern-African nationals (including people from Sudan, South Sudan, Eritrea, Kenya and Somalia), with most of the remainder being African-American customers.

46.

Beginning in 2014, Sheba increased its marketing efforts on social media by, for example, advertising DJs and its hookah lounge.

47.

In late 2016, Sheba filed a renewal application for its Occupational Tax Certificate ("OTC" or "business license") for 2017.

48.

As part of the OTC renewal application, for the first time since opening in 1998, Sheba was required by the County to complete a "Letter of Entertainment" form.  This form includes the following questions:

(A)  Are you going to have entertainment?

(B)  Is this a sit down restaurant only?

(C)  Is this a late night establishment?

(D)  Is this a nightclub?

49.

On the form, "restaurant" is defined as "[a]n establishment where food and drink are prepared, served, and consumed primarily within the principal building."  A "Late Night Establishment" is defined as "[a]ny establishment licensed to dispense alcoholic beverage for consumption on premises where such establishment is open for use by patrons beyond 12:30 a.m."   Finally, a "Nightclub" is defined as a "commercial establishment dispensing alcoholic beverages for consumption on the premises and in which dancing and musical entertainment is allowed."

50.

Sheba completed the form by indicating it was a late night establishment, and the County approved it indicating "grandfathering renewed for LNE" as of December 21, 2016.

<u>The County begins repeatedly</u>

<u>inspecting and ticketing Sheba</u>

51.

Beginning on December 29, 2016, representatives of the
County's Fire Marshal's Office and the Code Enforcement
Division of the Department of Planning and Sustainability
began regularly visiting Sheba.

52.

On January 27, 2017, Jewett of the Fire Marshal's
Office cited Sheba for an assortment of petty infractions.
On that visit to the restaurant, Jewett told Sheba's manager
that he was there to find a way to shut it down.

53.

On February 4, and again on February 11, inspectors
from code enforcement and the fire marshal's office
inspected Sheba.  The code enforcement officer cited Sheba
for "operating outside of the Letter of Entertainment,"
ostensibly alleging that Sheba was not authorized to operate
as a "nightclub," even though the business had been
providing musical entertainment and allowing customer
dancing for almost 19 years.  The fire marshal inspector
cited Sheba for exceeding the occupancy limit and for having
sparklers in champagne bottles.

54.

Between December 29, 2016 and March 25, 2017, the
County's inspectors issued multiple citations to Sheba,
requiring it to appear in the Magistrate Court of DeKalb
County multiple times.

55.

These citations were for alleged fire code violations,
including, but not limited to, overcrowding by exceeding
purported occupancy limits, use of sparklers and open
flames, failure to comply with orders given, failure to
obtain a permit for construction, and for alleged violation
of LNE and nightclub regulations and "operating outside the
letter of entertainment."  None of the alleged violations
were a matter of life safety; all of the legitimate
accusations were immediately corrected.

56.

On March 25, 2017, the Fire Marshal issued "Notice of
Fire Hazard" to Petitioner requiring Sheba to shut down
immediately and instructing Sheba to gain approvals from the
Fire Marshal or the Planning and Sustainability Department
prior to reopening.

57.

Following the County's order, Sheba closed.
Immediately Sheba consulted with its architect and submitted

the appropriate applications to the City's building and fire
officials on revising the restaurant's building plans.

58.

Every fire hazard issue identified by the County was
promptly corrected by Sheba.  For example, a sprinkler plan
was submitted and approved by the County on March 9, yet the
County refused to issue the permit.

59.

Sheba has been unable to reopen its business since it
was shut down March 25, 2017, in spite of repeated efforts
to engage and satisfy the County Defendants.

The County revokes Sheba's

Certificate of Occupancy

60.

On April 21, 2017, Baker, Director of Planning and
Sustainability for the County, advised Sheba by letter that
its C.O. was being revoked due to repeated code violations
and a purported change of use; and that any grandfathered
use Sheba was entitled to was being terminated due to the
revocation of its business license and purported change in
use.

61.

On May 5, 2017, Sheba appealed Baker's decision to
revoke the C.O. and to "terminate Sheba's grandfathered

status" to the County's Zoning Board of Appeals on the
grounds that Baker's actions were ultra vires, arbitrary,
not authorized by law and based on erroneous findings of
fact.

62.

Sheba's appeal was heard by the ZBA on June 14, 2017.

63.

The ZBA denied the appeal, with four ZBA members voting
in support of that denial and with one against it.

The County revokes Sheba's

business license

64.

In the same letter where Baker revoked the C.O. (¶ 60),
the County denied Sheba's business license for 2017 because,
it said, that Sheba had changed its use.  This was a
deliberate misrepresentation; Sheba had not changed its use.

65.

The County purposefully delayed a decision on the
business license (Baker), and refused to reasonably process
the building permit application and the sprinkler plans
(Cox, Jewett, and Adams), all in a coordinated effort to
prohibit Sheba from operating.

66.

Sheba appealed from Baker's decision to the County's

Certificate Review Board ("CRB").  The CRB reversed Baker's
decision and ordered that Sheba's 2016 business license and
2017 business license should be reinstated and approved by
the County, respectively.  The County did not appeal the
CRB's decision.

<u>The other Ethiopian restaurants in District 2</u>

67.

Within District 2, since 2015, there have been about 10
Ethiopian restaurants.  These restaurants were or are owned
and operated by people from Ethiopia or Eritrea, and a
majority of their customers are from those countries or
neighboring East African countries.

68.

Beginning in 2015, Commissioner Rader, acting in
concert with the other defendants and certain citizens of
the County, began targeting District 2's Ethiopian
restaurants for heightened enforcement of facially-neutral
ordinances regulating commercial establishments.  The goal
was to severely cripple or terminate those businesses.

69.

<u>Day & Night</u>.  In December 2015, a restaurant known as
'Day & Night' (3837 Covington Highway) was cited by the
County for fire code violations, including unsafe condition
due to inadequate means of egress, alterations and occupancy

without approvals.  The County ordered the restaurant to
cease operating until all approvals were provided by the
Fire Marshal's office and the Planning and Sustainability
office.  Day & Night, which catered to a predominantly
African-American clientele, was unable to obtain the
approvals and was forced to close.

71.

Aroma Lounge.  In April 2016, a restaurant known as
'Ledet Restaurant' a/k/a 'Aroma Lounge' (3082 Briarcliff
Road) was cited by the County for fire code violations,
including unsafe condition due to inadequate means of
egress, alterations and occupancy without approvals.  The
County ordered the restaurant to cease operating until all
approvals were provided by the Fire Marshal's office and the
Planning and Sustainability office.  Aroma Lounge, which
catered to a predominantly African-American clientele, was
unable to obtain the approvals and was forced to close.

71.

Other Ethiopian establishments targeted by the
defendants include: Arif Lounge, Meskerem Ethiopian
Restaurant/Luv Lounge, Mint Ultra Lounge, Therapy Lounge,
Food Therapy, and Pure.  Of these District 2 businesses,
some were forced to move or close permanently (Arif Lounge
and Pure); one lost its lease (Mint); and the others are

barely staying afloat because Commissioner Rader will not
approve a SLUP for them (Meskerem, Therapy Lounge, and Food
Therapy).  These are among the only Ethiopian restaurants in
Commissioner District 2.

<u>The Comparators</u>

72.

The alcohol-licensed restaurants operating in
Commissioner District 2 which cater to predominately white
late-night clientele have not been subjected to the
disruptive code inspections in the manner or frequency as
Sheba has.

73.

The alcohol-licensed restaurants operating in
Commissioner District 2 which cater to predominately white
late-night clientele have not been subjected to the music
and dancing ban in the manner that Sheba has.

74.

<u>Bench Warmers</u>.  In January 2017, a restaurant known as
Bench Warmers Sports Grill (2775 Clairmont Rd, Atlanta, GA
30329) was cited by the County for fire code violations,
including inoperable emergency lighting, alterations, and
occupancy without approvals.  Rather than ordering the
restaurant to cease operating until all approvals were
provided by the Fire Marshal's office and the Planning and

Sustainability office, Jewett instructed Bench Warmers to contact his office to review the current use.  (Bench Warmers was and is operating until 4:00 a.m. under a SLUP.)  During this inspection, Jewett also confirmed that Bench Warmers unlawfully expanded its deck.  Bench Warmers continues to operate unimpeded today.

75.

Tin Lizzy's. In 2013, a restaurant known as Tin Lizzy's (1540 Avenue Pl, Atlanta, GA 30329) applied to the County for a SLUP to operate a late night establishment.  The County's planning staff noted that Tin Lizzy's property line abuts a residential district, but reasoned that the establishment itself was approximately 1,000 feet from the nearest residential zone and that there were "no anticipated adverse impacts on surrounding properties since the site has access to a major thoroughfare."  Even though the business shares property with hundreds of apartments and condominium units, the board approved the SLUP application allowing Tin Lizzy's to sell alcohol until 4:00 a.m. with certain conditions.

General Allegations

76.

The individual defendants have agreed that the Ethiopian restaurants in District 2 should not be allowed to

operate after 12:30 a.m., if at all.  To achieve this goal, these defendants have singled out District 2's Ethiopian restaurants (including Sheba) for heightened enforcement of the County's building, fire and zoning codes, as well as subjecting these businesses to the standardless SLUP process.

77.

The defendants have acted, and are acting, in full knowledge that their actions are oppressive and without authority of law.

78.

As a result of the defendants' actions, Sheba has been unable to operate without fear of prosecution.

79.

Sheba has exhausted its administrative remedies.

80.

Sheba has no adequate remedy at law.

COUNT 1

EQUAL PROTECTION CLAUSE VIOLATIONS

81.

Sheba realleges each fact set forth in paragraphs 1 through 80 of this complaint and incorporates them here by reference.

82.

The defendants' actions have deprived, and will continue to deprive, Sheba of property rights and liberty interests protected by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and corresponding provisions of the Georgia Constitution (Art. I, § 1, ¶ 2), in that, inter alia:

(a) the County has discriminated against Sheba by allowing similarly situated venues to obtain and retain those certificates and licenses necessary to operate a late night establishment, even though such venues have offended identical sections of the County's Codes, and this disparate treatment is based on an animosity toward Sheba and otherwise serves no rational purpose; and

(b) the County's policymakers harbor an invidious discriminatory purpose in thwarting Sheba's operation based on its ownership and its clientele's racial and ethnic composition, which was and is a substantial motivating factor for (i) sending code enforcement officers into Sheba for inspection repeatedly, and (ii) withholding or revoking permits and licenses based on arbitrary grounds; and

(c)   the County's selective enforcement of its
      ordinances is based on an animosity toward Sheba
      (and its clientele's race and ethnicity) and
      otherwise serves no rational purpose.

83.

The denial of constitutional rights is irreparable
injury per se, and Sheba is entitled to recover damages in
an amount to be determined by the enlightened conscience of
an impartial jury.

84.

The deprivation of constitutional rights is irreparable
injury per se, and Sheba is entitled to declaratory and
injunctive relief barring the defendants from infringing
upon these rights.

85.

Sheba is entitled to recover nominal, compensatory, and
punitive damages from the County for the loss of its rights
protected under this claim.

COUNT 2

42 U.S.C. § 1983: DUE PROCESS CLAUSE VIOLATION

86.

Sheba realleges each fact set forth in paragraphs 1
through 80 of this complaint and incorporates them here by
reference.

87.

The actions of the defendants have deprived Sheba of property rights and liberty interests protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and corresponding provisions of the Georgia Constitution (Art. I, § 1, ¶ 1), in that, <u>inter alia</u>:

(a) The County's ordinances give the fire marshal and building inspector the unfettered discretion to conduct unreasonable inspections and to issue unreasonable emergency closure orders without any meaningful substantive standards to guide that discretion and without necessary procedural safeguards to prevent an erroneous deprivation, and any post-deprivation remedy offered by the County's ordinances (or the State) will not adequately cure the erroneous deprivation;

(b) The County's ordinances do not provide for notice and an opportunity to be heard before a closure order is issued when, as here, there were and are no exigent or emergency circumstances present;

(c) The repeated inspections of Sheba were pretextual and was undertaken with no reason to believe that Sheba was in violation of the fire or building

codes in a way that posed a serious threat to human life.  The problems discovered were either minor or technical in nature (for example, a failure to obtain a permit for construction which is otherwise code-compliant);

(d)  Insofar as the County's code permits the County to deny or revoke Sheba's business license and C.O. for violating the SLUP, it violates the Georgia Constitution and O.C.G.A. § 3-3-2;

(e)  Insofar as the defendants are relying on the County's definitions of the terms "restaurant," "nightclub," and "late-night establishment" (read together) as the basis for refusing to issue Sheba's building permit (and deny the business license and revoke the C.O.), those ordinance provisions unlawfully intrude upon a substantive due process right by arbitrarily and irrationally depriving Sheba of its property rights and liberty interests; and

(f)  The County arbitrarily refused to issue a routine building permit which Sheba needed to address the violation alleged by the County.

88.

The denial of constitutional rights is irreparable

injury per se, and Sheba is entitled to recover damages in
an amount to be determined by the enlightened conscience of
an impartial jury.

89.

The deprivation of constitutional rights is irreparable
injury per se, and Sheba is entitled to declaratory and
injunctive relief barring the defendants from infringing
upon these rights.

90.

Sheba is entitled to recover nominal, compensatory, and
punitive damages from the County for the loss of its rights
protected under this claim.

COUNT 3

FREE SPEECH VIOLATIONS

91.

Sheba realleges each fact set forth in paragraphs 1
through 80 of this complaint and incorporates them here by
reference.

92.

The County's actions have deprived, and will continue
to deprive, Sheba of interests protected by the First
Amendment to United States Constitution, and corresponding
provisions of the Georgia Constitution (Art. I, § 1, ¶ 5),
in that, inter alia:

(a) the County's definitions of the terms
"restaurant," "nightclub," and "late night
establishment" are vague facially and as applied
to Sheba because those terms, when read together,
prohibit music, dancing and other forms of
entertainment yet lack any limiting principle or
objective standards to define where, when, why,
and how the restrictions operate, and thus they
vest the County with discretion to use protected
speech or expression to (i) deny a building permit
or business license, and (ii) revoke a C.O.,
alcoholic beverage, or business license based upon
subjective criteria; and

(b) the County's definitions of the terms
"restaurant," "nightclub," and "late night
establishment," insofar as these terms infringe on
protected speech and expression, (i) fail to serve
or further a substantial governmental interest,
(ii) are not unrelated to the censorship of
protected speech and expression, and (iii) are not
narrowly tailored to avoid unlawful infringement
of speech or expression.

93.

The denial of constitutional rights is irreparable

injury per se, and Sheba is entitled to recover damages in an amount to be determined by the enlightened conscience of an impartial jury.

94.

The deprivation of constitutional rights is irreparable injury per se, and Sheba is entitled to declaratory and injunctive relief barring the defendants from infringing upon these rights.

95.

Sheba is entitled to recover compensatory, nominal, and punative damages from the County for the loss of its rights protected under this claim.

COUNT 4

42 U.S.C. § 1981: RACE DISCRIMINATION

96.

Sheba realleges each fact set forth in paragraphs 1 through 80 of this complaint and incorporates them here by reference.

97.

Sheba is a business with ownership and management that has a minority racial identity, and it is being deprived by defendants of the same rights as white business owners to make and enforce contracts with patrons and promoters.

98.

The defendants have acted, and are acting, with intent to discriminate against Sheba on the basis of race or ethnicity.  The defendants' actions in summarily closing and not allowing Sheba to reopen is based on racial considerations and constitutes unlawful intentional discrimination in violation of 42 U.S.C. § 1981, made applicable to these defendants under 42 U.S.C. § 1983.

99.

The defendants have acted with malice and reckless indifference to Sheba's federally-protected rights.

100.

The denial of constitutional rights is irreparable injury per se, and Sheba is entitled to recover damages in an amount to be determined by the enlightened conscience of an impartial jury.

101.

The deprivation of constitutional rights is irreparable injury per se, and Sheba is entitled to declaratory and injunctive relief barring the defendants from infringing upon these rights.

102.

Sheba is entitled to recover nominal, compensatory, and punitive damages from the County for the loss of its rights protected under this claim.

COUNT 5

42 U.S.C. § 1985(3):

CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

103.

Sheba realleges each fact set forth in paragraphs 1 through 80 of this complaint and incorporates them here by reference.

104.

The defendants conspired to deprive Sheba of equal protection of the laws and of equal privileges and immunities under the laws in furtherance of their goal to harm Sheba and its interests.

105.

The defendants' actions were motivated by a race-based animus.

106.

The defendants committed acts in furtherance of their conspiracy including: repeatedly citing Sheba for petty code infractions; refusing to properly process Sheba's license and permit applications to correct alleged unlawful conditions; summarily closing Sheba for not having the licenses and permits the County withheld; and revoking Sheba's business license and C.O. based on the same.

107.

Sheba has been deprived of its constitutional rights in freedom of speech and expression, due process, equal protection and freedom from discrimination based on race.

COUNT 6

O.C.G.A. § 9-6-20: PETITION FOR WRIT OF MANDAMUS

108.

Sheba realleges each fact set forth in paragraphs 1 through 80 of this complaint and incorporates them here by reference.

109.

As the building director, Adams, has a duty to grant a building permit where the applicant meets all ascertainable standards under the County's ordinances (e.g., Zoning Ordinance) for obtaining the building permit.

110.

The director's failure to perform, or the improper performance of, this duty gives rise to a defect of justice, as Sheba's building permit application is being withheld based on arbitrary criteria and in an arbitrary manner, which demonstrates a gross abuse of discretion.

111.

Sheba possesses a legal interest in having decisions relating to its building permit application made using

objective standards that do not offend the Georgia and federal constitutions.  See O.C.G.A. § 9-6-20.

112.

Sheba has asked the director (through the County Attorney) to perform this legal duty, which performance or proper performance he has refused to provide.

113.

A mandamus is the only conceivable state remedy which might ensure that the Director will perform his duty to issue Sheba's building permit.

114.

Sheba presently enjoys a right to the proper performance of this duty, which right will exist as of the date of any court order.

115.

In this case, the mandamus count and the federal claims, supra, are inextricably intertwined; they derive from the same common nucleus of operative facts.

116.

This Court has supplemental jurisdiction over this claim (or proceeding) under 28 U.S.C. § 1367.  Because the state court would have jurisdiction over this claim under O.C.G.A. § 9-6-20, this Court's supplemental jurisdiction is also invoked under City of Chicago et al. v. Int'l College

<u>of Surgeons</u>, 522 U.S. 156 (1997).

<u>COUNT 7</u>

<u>ATTORNEY'S FEES</u>

117.

Sheba realleges each fact set forth in paragraphs 1 through 80 of this complaint and incorporates them here by reference.

118.

The defendants' actions in enforcing patently unconstitutional ordinances in an arbitrary and vindictive manner, and in being stubbornly litigious, entitles Josephine to recover costs and reasonable attorney's fees in an amount to be determined at trial.  <u>See</u> O.C.G.A. § 13-6-11.

**WHEREFORE,** Sheba prays:

(a)   That as to Counts 1, 2, 3, and 4, the Court grant Sheba declaratory and injunctive relief, prohibiting the County (through its agents, officials, and employees) from interfering with Sheba's ability to operate in its format and to obtain the proposed C.O. and building permit;

(b)   That as to Counts 1, 2, 3, 4, and 5, the Court award Sheba compensatory, punitive, and nominal damages against the County for violating its

federal constitutional rights;

(c)     That as to Count 6, the Court grant the request
        for mandamus relief, ordering the proper
        defendants to issue the building permit and C.O.
        to Sheba, given that no valid or objective grounds
        exist to deny the application;

(d)     That as to Count 7, the Court award Sheba its
        reasonable costs and attorney's fees for bringing
        this action in an amount to be determined at
        trial; and

(e)     That Sheba be granted such other and further
        relief as the Court deems just and proper.

                        Respectfully submitted,

                        WIGGINS LAW GROUP


                        BY: /s/ Cary S. Wiggins
                        Cary S. Wiggins
                        Ga. Bar No. 757657

Suite 401
260 Peachtree Street, NW
Atlanta, GA 30303
Telephone: (404) 659-2880
Facsimile: (404) 659-3274
www.wigginslawgroup.com